UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCY GUO,

               Plaintiff,

     v.

ACCRETE LLC (d/b/a Accrete, Inc.), PRASHANT
BHUYAL, MAYANK PATEL, JASON KIRBY, and
JOSEPH MASHINSKI,

               Defendants.

Index No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Lucy Guo (hereinafter referred to as "Plaintiff" or "Guo"), by and through her attorneys, McLaughlin & Stern, LLP, as and for her Complaint against Accrete LLC (d/b/a Accrete, Inc. and hereinafter referred to as the "Company" or "Accrete"), Prashant Bhuyal ("P. Bhuyal"), Mayank Patel ("Patel"), Jason Kirby ("Kirby") and Joseph Mashinski ("Mashinski" and, collectively with the Company, P. Bhuyal, Patel and Kirby, the "Defendants"), alleges as follows:

## **NATURE OF THE ACTION**

1. This action arises out Defendants' egregious violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Civil Rights Act of 1991; the New York State Human Rights Law § 290, *et seq.* ("NYSHRL"); and the Administrative Code of the City of New York, New York City Human Rights Laws § 8-101, *et seq.* ("NYCHRL").

2. On May 4, 2020, Guo began working at Accrete – a technology company specializing in artificial intelligence ("AI"), which delivers AI solutions to Accrete's clients with a focus on the defense, intelligence, and cybersecurity industries. Accrete's largest client for AI contracts is the United States Government. Starting in the Fall of 2020 – when Guo began working

1

in person at Accrete's New York offices – until the time of Guo's wrongful termination on May 2, 2023, Defendants fostered and promoted a sexually charged and pervasively hostile work environment in which Guo was forcibly and continually subjected to overt and undeniable sexual harassment and discrimination.

3.    More specifically, during the timeframe noted above, Guo received numerous sexual overtures and advances from Accrete's upper management and personnel. These included graphic sexual language and unsolicited pictures of her co-worker's genitalia. Moreover, many senior level executives engaged with Guo in graphic sexual dialogues and consensual sexual relations. As set forth in greater detail below, Guo was used by Accrete as a sexual object, passed around by her male supervisors and counterparts to engage in sexual acts and was encouraged by senior management (specifically the CEO and COO) to sexually gratify other employees and clients. In essence, Defendants used Guo as their in-house sex toy and then discarded her when they tired of her and realized their potential liability. Unfortunately and unlawfully, Defendants only terminated Guo – a female – while not discipling in any manner the numerous male colleagues that engaged in the same and worse sexual conduct.

4.    While Guo did engage in several consensual sexual relationships with senior-level management and other employees, as well as with the brother of Accrete's founder and CEO, Vishal Bhuyal ("V.Bhuyal"), Accrete only chose to wrongfully terminate Guo – a female, rather than discipline any of their male employees who engaged in similar or worse behavior. Moreover, while Guo was counseled by Accrete concerning her sexual interactions with other employees, her male superiors subsequently continued to engage her in sexually charged discussions after this sham counseling. Clearly, Accrete's management had no problem putting on paper what they could

no put into practice – that being, the cessation of their encouragement and engagement of ongoing sexual interaction with Guo.

5.      This pattern and practice of unlawful behavior by Defendants was ongoing throughout Guo's employment with the Company; was known and condoned by the Company; and ultimately led to Guo's termination from the Company in May 2023.

6.      By way of example, Kirby, Executive Vice President of Sales for Accrete, the former Chief of Staff to the CEO and former COO of Accrete Government, sent Guo countless sexually explicit text messages during her employment. He engaged in discussions related to coprophilia, discussing how he wanted to *"pull out [his penis] and see [Guo's] shit. You take mine, and I'll piss down your face, down your tits, dripping off your pussy. I am definitely ready for you to eat my ass,"* and telling Guo that: *"Your ass tasted good"* and *"Let's fuck at lunch. Pull up your skirt, I'll piss on your pussy and you lick my balls after. Then ill [f]uck your gaping hole and you clean up."* Moreover, he said that: *"I want to sit on your face and squirt a little shit in your mouth and then jerk off in your mouth…"* and *"I definitely want to piss on you. Piss your pants and I'll punish you in the worst possible way."* He also sent Guo an unsolicited picture of his penis.

7.      Kirby and Guo engaged in a consensual sexual relationship, though – unlike Guo – Kirby never faced any discipline or termination for his actions. This is merely a small fraction of the explicit sexual texts that Guo received from Kirby and numerous other members of Accrete's C-suite, founders, supervisors and colleagues. Additionally, Mashinski, the Chief Revenue Officer at Accrete and a founding investor of the company, also engaged in grossly inappropriate sexual conduct with Guo. Quickly after Guo started working at Accrete, Mashinski began exchanging flirtatious texts with Guo which quickly digressed into outright sexual degradation and harassment.

3

Mashinski asked Guo: *"What do you think of me"* and *"I think we would have lots of fun right now."* He told Guo that he *"like[s] to please"* and asked Guo, in connection with demanding she send him naked photos, to "[*b*]*reak your rule. For my eyes only."* He later texted: *"What do u want me to do to you?"* and *"Are u wet right now?... So hot. Cum again… Text me a pic of u cumming…text me a pic that makes me cum…Show me where u want me to fuck u…I want to see your ass naked right now…i wanna see what I'm gonna fuck."* Additionally, Mashinki asked Guo to send him naked photos of herself on more than 20 occasions and complimented her nipple piercing. Mashinski also went to Guo's hotel room on a business trip and engaged in sexual conduct, including stripping naked and receiving a lap dance from Guo. Purportedly, Accrete counseled Guo to cease sexual dialogue with co-workers in November of 2021 (despite multiple sexual relationships with senior level executives before then). However, even after being instructed by Accrete that such behavior was frowned upon, Mashinski doubled down on his sexually charged communications and asked Guo about who she was dating, that he wanted to sexually please her, discussed having anal sex with Guo and bragged that he is sexually in *"a class by himself"* when it came to pleasing women and joked that he gets "*anxious about mixing work with…fat cocks in asses."* and that he *"[didn't] want a fat cock in [his] ass* 😳😳😳😳😳*"* These latter sexually charged communications were sent by Accrete's founding investor and member of the C-suite *after* the company gave Guo contradictory instructions to cease such dialogue. Clearly, the line which Accrete and its management drew regarding their tolerance for purported sexual harassment was blurred, one-sided and selectively enforced one, at best.

8.    Guo also received sexually suggestive text messages from Patel, Co-Founder, President and COO of Accrete. On one occasion, Patel suggested that Guo take another co-worker out and *"rock his world…I feel like he needs it"*, clearly implying that Guo should have sex with

her colleague. Patel also told Guo that ***"lesbians are awesome. I totally see what they see in women"*** in response to a text message exchange where the clear subtext of the communications centered around potentially engaging in group sex. Patel also told Guo that ***"10 years ago we wouldn't be having this type of conversation"*** and ***"[t]here is a time and place for everything under the sun"*** in the context of these discussions. These texts clearly conveyed that Accrete management promoted, encouraged and engaged in overt sexual conduct with Guo and sexually objectified Guo, treating her differently from her male colleagues.

9.      Notably, at the December 2022 Accrete holiday party, one Accrete investor was acting visibly intoxicated and asked to continue the evenings' festivities at Cipriani's. Accrete's own founder and CEO, P. Bhuyan instructed Guo to ***"go with him and keep him happy"*** – clearly suggesting that Guo have sex with the investor so that Accrete could secure investment funds.

10.     As will be more fully detailed below, there are almost 3-years-worth of such appalling, outrageous, harassing and discriminatory incidents.

11.     This evidence alone would be sufficient to constitute a clear violation of Title VII, NYSHRL and NYCHRL. Yet these are just a small sampling of the many examples of the hostile, discriminatory, predatory, harassing and sexually charged work environment created by Defendants.

## **PARTIES**

12.     Plaintiff is an individual and resident of the State of New York, with her current principal residence located in New York, New York.

13.     Upon information and belief, Defendant Accrete LLC is a Delaware Limited Liability Company, with its headquarters located at 17 State Street, Suite 3500, New York, New York, 10004.

14.     Upon information and belief, Defendant Prashant Bhuyal is an individual and resident of the State of New York.

15.     Upon information and belief, Defendant Mayank Patel is an individual and resident of the State of New York.

16.     Upon information and belief, Defendant Jason Kirby is an individual and resident of the State of New Jersey.

17.     Upon information and belief, Defendant Joseph Mashinski is an individual and resident of the State of New York.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, Title VII of the Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e, *et seq*., as amended by the Civil Rights Act of 1991. Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Civil Rights Act of 1991.

19.     On June 8, 2023, Guo filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and requested an immediate right to sue letter in connection with the same.

20.     Moreover, the Court has supplemental jurisdiction over the claims arising under the NYSHRL and NYCHRL, pursuant to 28 U.S.C. § 1367, because such claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of New York.

## FACTS UPON WHICH THE ACTION IS BASED

22.     On or about May 4, 2020, Guo began working at Accrete as a Senior Industry Research Analyst. From the time Guo began working in person at Accrete's New York offices in the Fall of 2020 until the time of Guo's wrongful termination on May 2, 2023, Guo was forced to operate in an overtly sexualized and hostile work environment, was treated differently than her male colleagues and was objectified and asked to sexually gratify Accrete's male-dominated staff and investors.[1]

23.     Due to the COVID-19 pandemic, Guo initially worked fully remotely until the Fall of 2020. Notably, less than a year after her hire, Accrete elevated Guo to the role of Director of Industry Research. Guo's talent and hard work made her a valuable employee – a fact routinely recognized and acknowledged by Accrete's own executive team during her employment and after her termination. As a result, Guo was well-paid and earned approximately $200,000 in annual compensation at the time of her termination between salary, benefits and bonus.

**Guo Transitions to In Person Work and Immediately Faces a Sexually Charged and Hostile Work Environment**

24.     When Guo moved from full-time remote work to appearing in-person at Accrete's offices in the Fall of 2020, she was immediately met with sexual advances from her male colleagues. During the first month of her in-office return, Guo received sexually suggestive and explicit communications from at least three of Accrete's male executives/employees, including

---

[1] During the relevant time period, Accrete's staff included approximately twenty-two (22) male employees and only three (3) female employees, including Guo.

Mashinski, founding investor and acting Chief Revenue Officer of Accrete and the former President of Accrete Government. A non-exhaustive summary of the sexually-charged and/or harassing behavior from male employees and management of Accrete towards Guo is detailed below.

### MASHINSKI

25.     Mashinski is the Chief Revenue Officer at Accrete; a founding investor of the Company; the former President of Accrete Government; and was, at all relevant times, senior to Guo. In or around October of 2020, Mashinski traveled to Accrete's New York office and met Guo in-person for the first time. Mashinski and Guo immediately started exchanging flirtatious texts with Mashinski initiating the sexually charged communications.

26.     Mashinski quickly engaged in inappropriate correspondence with Guo, texting messages such as *"what do you think of me"* and *"I think we would have lots of fun right now."* He then told Guo that he *"like[s] to please"* and asked Guo, in connection with demanding she send him naked photos, to *"[b]reak your rule. For my eyes only."*.

27.     He later texted: *"What do u want me to do to you?"* and *"Are u wet right now?... So hot. Cum again… Text me a pic of u cumming…are you gonna cum again now?...text me a pic that makes me cum…text me a pic of your ass…Show me where u want me to fuck u…I want to see your ass naked right now…i wanna see what I'm gonna fuck…do you want me to lick it first?...You are sooooo hot its unreal."* Additionally, Mashinski asked Guo to send him naked photos of herself on more than 20 occasions and complimented her nipple piercings and tattoos. Mashinski also often discussed having anal sex with Guo and bragged that he is sexually in *"a class by himself"* when it came to pleasing women and joked that he gets *"anxious about mixing work with…fat cocks in asses,"* and that he *"[didn't] want a fat cock in [his] ass*

8

😶😶😶😶😶"😕The latter of these conversations occurred after Guo was purportedly counseled by Accrete to stop engaging in sexually charged communications.

28. In or around September 14, 2021, while at the INSA Conference in Virginia, Mashinski came to Guo's hotel room after a team dinner. Contemporaneous text messages exist to confirm this rendezvous. Both Guo and Mashinski then stripped naked and engaged in sexual activities, including a lap dance. Despite Mashinski's participation in consensual sexual activities with Guo, only Guo was terminated for sexual harassment.

29. Importantly, Guo was always very clear with Mashinski (and all other employees) that she was not interested in serious relationships and Mashinski himself confirmed the relationship was consensual, stating *"I don't want to get us in trouble [but] we are grown adults"* and *"I don't want to get us in trouble so don't worry about anything"* and that their relationship would be *"our secret"*. Mashinski also encouraged Guo to feel free to express her sexuality with him and other employees, telling her that *"sexual liberation is a beautiful thing."*

30. Moreover, to further support Guo's stellar job performance, in addition to Mashinski's sexually lewd commentary, he would often compliment Guo, making statements such as *"I am in awe after watching you present…you are brilliant"* and *"I told my team that you're one of the smartest people I've ever met."*

### KIRBY

31. In or around March of 2021, Kirby joined Accrete as Chief of Staff to its CEO, P. Bhuyan. That same month, Guo and Kirby met for drinks at a hotel bar near her apartment. Afterwards, they returned to Guo's apartment and had sex. Guo and Kirby continued their sexual relationship thereafter, with Guo and Kirby having sex on at least one other occasion during a July of 2021 business trip.

32.    In the years following their first sexual encounter, Kirby sent over 100 sexually explicit text messages to Guo, including the "dick pic" previously referenced in the Complaint. Among the messages which Kirby sent to Guo were: ***"[I] had flashbacks on how good you taste… pussy, and that little yummy asshole", "Let's fuck at lunch. Pull up your skirt, I'll piss on your pussy and you lick my balls after. Then I'll fuck your gaping hole and you clean up…then we go back to work", "You want my dick in your ass?", "If only I had a tall glass of Asian delicious right now…",*** and ***"Your ass looks good in that dress. We have a lot to catch up on."*** A sampling of these text messages is contained below:

 

33.    Moreover, Kirby engaged in discussions related to coprophilia, discussing how he wanted to ***"pull out [his penis] and see [Guo's] shit. You take mine, and I'll piss down your face, down your tits, dripping off your pussy. I am definitely ready for you to eat my ass."*** He also told her that: ***"Your ass tasted good"*** and ***"I want to sit on your face and squirt a little shit in your mouth and then jerk off in your mouth…"*** and ***"I definitely want to piss on you. Piss your pants and I'll punish you in the worst possible way."***

**P**ATEL

34.    In and around August of 2021, Guo exchanged sexually suggestive texts from Patel, the President and Chief Operating Officer of Accrete. As with other inappropriate communications

10

from Accrete employees, Patel engaged in flirtatious exchanges, telling Guo that he wanted *"to know more about all these parties you're going to…who what where when and how…"*

35.     Patel then continued his flirtatious exchange with Guo by stating ""*lesbians are awesome. I totally see what they see in women"* in response to a text message exchange where the clear subtext of the communications centered around potentially engaging in group sex.

36.     Patel then texted *"10 years ago we wouldn't be having this type of conversation"* and *"[t]here is a time and place for everything under the sun"* in the context of these sexually-charged communications.

37.     Perhaps most outrageously, particularly given Accrete's claim that Guo was terminated for "sexual harassment", Patel implied that Guo should sleep with her fellow co-workers. Immediately following the previously mentioned flirtatious texts, Patel told Guo that she should *"invite Daryl [Chen], a male employee at Accrete,] out and rock his world… I feel like he needs it."*

### P. BHUYAN & V.BHUYAN

38.     On or around November 16, 2021, Accrete hosted a company event in the New York office with potential investors and General Stanley McChrystal in attendance. P. Bhuyan – founder and CEO of Accrete – attended the event along with his mother, wife, children and brother. P. Bhuyan's brother, V.Bhuyan, immediately started flirting with Guo and touching her throughout the evening. At one point, Patel, V.Bhuyan and Guo were standing and talking to a few others when V.Bhuyan grabbed her arm and said *"I love her tattoos. I don't care if she has a boyfriend. I want to get together with her."* Patel witnessed this exchange and said nothing.

39.     Later, V.Bhuyan asked Guo to join him downstairs in a cab as the event concluded. V.Bhuyan and Guo went back to Guo's apartment and had sex. Afterwards, the two exchanged

11

sexually suggestive texts and photographs. On or about June 18, 2022, V.Bhuyan – unprompted – texted Guo after 11 PM asking *"can I fuck you [tonight?]."* He also asked Guo if he could watch her have sex with other men over video calls and then expressed apprehension about his sexual encounters with her because he was concerned that his girlfriend would find out. There were numerous other instances in which V.Bhuyan asked Guo for naked photos and described in detail his sexual infatuation with her. Additionally, V.Bhuyan asked Guo if she had any illicit narcotics. Having the brother of Accrete's CEO engage in this behavior, along with all other mentioned employees and senior-level executives, clearly set the tone for a bacchanal like environment in which Guo was encouraged and rewarded for participating in sexual conduct with her supervisors, their relatives, employees and investors.

40.     Moreoveer, P. Bhuyan's treatment of Guo as a sexual object was later confirmed at the previously mentioned December 2022 Accrete holiday party, when he instructed Guo to *"go with [an Accrete investor] and keep him happy"* – clearly suggesting that Guo have sex with the investor so that Accrete could secure investment funds.

**OTHER EXAMPLES OF SEXUALLY CHARGED CONDUCT DIRECTED AT GUO**

41.     In addition to the foregoing examples of Accrete's sexually charged and hostile work environment, Guo received explicit messages and/or engaged in consensual sexual relations with the following male members of Accrete's staff and management team:

- Peter Bierfeldt ("Bierfeldt"), Accrete's Chief Security Officer and Guo exchanged sexually charged and flirtatious text messages in which Bierfeldt suggested that he masturbated thinking of Guo in the shower. Notably, and further undermining the sham basis for Guo's termination, Guo explicitly supported Bierfeldt's ultimate decision to stop further sexual discussion;

- Sahil Agarwal, Accrete's Former Chief of Artificial Intelligence, and Guo engaged in a consensual sexual relationship while they were both employed with Accrete;

- Alex Kramer, Accrete's Director of Operations, and Guo exchanged flirtatious and sexually suggestive text messages wherein Kramer – Guo's mentor – told her not to "bend over in front of me in the office" and discussed the size of his penis;

- Tejas Pant, Director of AI Science, and Guo engaged in a consensual sexual relationship during the time of their employment with Accrete. They also exchanged sexually suggestive and explicit text messages;

- Daryl Chen, Senior Data Scientist, and Guo engaged in a consensual sexual relationship during the time of their employment with Accrete. They also exchanged sexually suggestive and explicit text messages.

**Accrete's Disparate Treatment and Wrongful Termination of Guo Based Upon Her Status as a Female**

42.    On May 4, 2023, Accrete terminated Guo's employment, purportedly for engaging in sexual harassment.

43.    However, the behavior in which she engaged paled in comparison to Accrete's orchestrated campaign to objectify and use Guo sexually for its male employees' personal and business needs and desires.

44.    In sum, Guo was subjected to Accrete's sexually charged, harassing and hostile work environment, fostered and promoted by Accrete and its management, and, when Guo chose to engage in consensual sexual relationships and communications with her male colleagues, only she received punishment. This disparate treatment, in addition to being unprofessional and understandably embarrassing for Accrete, is a textbook example of gender discrimination.

13

45.    Consequently, Guo is entitled to significant damages for back pay, front pay, compensatory damages resulting from the emotional distress proximately caused by Accrete's discriminatory conduct, as well as attorney's fees, costs and punitive damages.

**FIRST CAUSE OF ACTION**
**Discrimination in Violation of Title VII**
**(Sexual Harassment)**

46.    Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 42, as if fully set forth herein.

47.    During the course of her tenure at Accrete, Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, unlawfully subjected Plaintiff to a series of discrete acts of severe and pervasive sexual harassment without explanation or permission, in clear violation of Title VII, 42 U.S.C. § 2000e *et seq*.

48.    In addition, Defendant Accrete is vicariously liable for the acts of Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, as the foregoing actions set forth herein were performed while engaged their capacities as senior-level employees/management of Accrete and while they were superiors to Plaintiff with immediate or successively higher authority. Further, Defendant Accrete violated Title VII, 42 U.S.C. § 2000e *et seq*. by permitting Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, to engage in sexually harassing behavior against Plaintiff, with complete knowledge of such unlawful behavior, and failing to alleviate this unlawful conduct.

49.    As a result of Defendants' conduct, Plaintiff has suffered lost wages, employment benefits, damages for pain and suffering, emotional distress, humiliation, mental anguish, loss of enjoyment of life as a result of the sexual harassment to which she was subject, and punitive damages.

14

## SECOND CAUSE OF ACTION
### Discrimination in Violation of the NYSHRL
### (Sexual Harassment)

50.    Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 46, as if fully set forth herein.

51.    During the course of her tenure at Accrete, Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, unlawfully subjected Plaintiff to a series of discrete acts of severe and pervasive sexual harassment without explanation or permission, in clear violation of Executive Law § 296(1).

52.    In addition, Defendant Accrete is in clear violation of Executive Law § 296(1) by permitting Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, to engage in sexually harassing behavior against Plaintiff, with complete knowledge of such unlawful behavior, and failing to alleviate this unlawful conduct.

53.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her gender, Defendants violated the NYSHRL.

54.    As a result of Defendants' conduct, Plaintiff has suffered lost wages, employment benefits, damages for pain and suffering, emotional distress, humiliation, mental anguish, loss of enjoyment of life as a result of the sexual harassment to which she was subject, and punitive damages.

## THIRD CAUSE OF ACTION
### Discrimination in Violation of the NYCHRL
### (Sexual Harassment)

55.    Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 51, as if fully set forth herein.

15

56.    Defendants violated New York City Administrative Code §8-107(1)(a), by engaging in sexually harassing behavior against Plaintiff and by permitting Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, to engage in sexually harassing behavior against the Plaintiff, with complete knowledge of such unlawful behavior, and failing to alleviate this unlawful conduct.

57.    As a result of Defendants' conduct and failure to alleviate the sexually harassing and abusive conduct, Plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

## FOURTH CAUSE OF ACTION
### Discrimination in Violation of Title VII
### (Hostile Work Environment)

58.    Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 54, as if fully set forth herein.

59.    Defendants created a hostile work environment, in violation of Title VII, 42 U.S.C. § 2000e *et seq*. through overtly sexualized and abusive behavior, physical contact and emotional abuse perpetrated by Defendants against Plaintiff, which were so severe and pervasive that it altered Plaintiff's working conditions and created a hostile work environment.

60.    Defendant Accrete is vicariously liable for the acts of Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, as their actions set forth herein were performed while engaged in their capacity as senior-level employees/management of Accrete and while they were superiors to Plaintiff with immediate or successively higher authority.

16

61.    Plaintiff has suffered lost wages, employment benefits, damages for pain and suffering, emotional distress, humiliation, mental anguish, loss of enjoyment of life as a result of the sexual harassment to which she was subject, and punitive damages.

### FIFTH CAUSE OF ACTION
### Discrimination in Violation of NYSHRL
### (Hostile Work Environment)

62.    Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 58, as if fully set forth herein.

63.    The overtly sexualized and abusive behavior, unwelcome physical contact and emotional abuse perpetrated by Defendants against Plaintiff were so severe and pervasive that it altered Plaintiff's working conditions and created a hostile work environment.

64.    Defendants are liable individually for their conduct, and as an aider and abetter of the unlawful actions set forth herein.

65.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her gender, Defendants violated the NYSHRL.

66.    Defendants violated Executive Law §296(1), by creating a hostile work environment by permitting Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, to engage in harassing behavior against the Plaintiff, with complete knowledge of such unlawful behavior.

67.    As a result of Defendants' failure to alleviate the sexually harassing conduct, plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress humiliation and loss of enjoyment of life; and has incurred, and will incur damages thereby.

17

**SIXTH CAUSE OF ACTION**
**Discrimination in Violation of NYCHRL**
**(Hostile Work Environment)**

68.     Defendants violated New York City Administrative Code §8-107(1)(a), by creating a hostile work environment, as set forth herein, by engaging in sexually harassing behavior against Plaintiff and by permitting Defendants Mashinski, Kirby, Patel and P. Bhuyan, amongst others, to engage in sexually harassing behavior against the Plaintiff, with complete knowledge of such unlawful behavior, and failing to alleviate this unlawful conduct.

69.     As a result of Defendants' conduct and failure to alleviate the sexually harassing and abusive conduct, Plaintiff has lost, and will lose wages and benefits that she would have obtained from said position; and has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

**SEVENTH CAUSE OF ACTION**
**Discrimination in Violation of Title VII**
**(Wrongful Termination)**

70.     Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 66, as if fully set forth herein.

71.     Guo was qualified for her position at Accrete and performed the duties of her employment competently.

72.     Guo was terminated for engaging in conduct which her male superiors at Accrete not only encouraged and condoned, but also conduct in which they – and their other male colleagues and employees – engaged.

73.     Therefore, Guo was the subject of disparate discriminatory treatment based solely upon her status as a woman.

18

74. Consequently, Defendants unlawfully terminated Plaintiff's employment in violation of Title VII, 42 U.S.C. §2000e, *et seq.*

75. Plaintiff has suffered lost wages, employment benefits, damages for pain and suffering, emotional distress, humiliation, mental anguish, loss of enjoyment of life as a result of the termination of her employment and punitive damages.

**EIGTH CAUSE OF ACTION**
**Discrimination in Violation of NYSHRL**
**(Wrongful Termination)**

76. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 72 as if fully set forth herein.

77. Guo was qualified for her position at Accrete and performed the duties of her employment competently.

78. Guo was terminated for engaging in conduct which her male superiors at Accrete not only encouraged and condoned, but also conduct in which they – and their other male colleagues and employees – engaged.

79. Therefore, Guo was the subject of disparate discriminatory treatment based solely upon her status as a woman.

80. Consequently, Defendants unlawfully terminated Plaintiff's employment in violation of in violation of the New York State Human Rights Law § 296, *et seq.*

81. By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her gender, Defendants violated the NYSHRL.

82. As a result of Defendants unlawful practices, Plaintiff has suffered lost wages, employment benefits, damages for pain and suffering, emotional distress, humiliation, mental anguish and loss of enjoyment of life as a result of the termination of her employment.

19

## NINTH CAUSE OF ACTION
### Discrimination in Violation of NYCHRL
### (Wrongful Termination)

83.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 79 as if fully set forth herein.

84.    Guo was qualified for her position at Accrete and performed the duties of her employment competently.

85.    Guo was terminated for engaging in conduct which her male superiors at Accrete not only encouraged and condoned, but also conduct in which they – and their other male colleagues and employees – engaged.

86.    Therefore, Guo was the subject of disparate discriminatory treatment based solely upon her status as a woman.

87.    Consequently, Defendants unlawfully terminated Plaintiff's employment in violation of the New York City Administrative Code, § 8-107, *et seq.*

88.    As a result of Defendants' unlawful practices, Plaintiff has suffered, and will suffer mental anguish, emotional distress and loss of enjoyment of life; and has incurred, and will incur damages thereby.

## JURY DEMAND

Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants awarding lost back wages and front wages; accrued benefits; punitive damages; emotional distress; attorneys' fees and costs and all such other and different relief that this court may deem just;

(a)    On the First Cause of Action, judgment against Defendants in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(b)      On the Second Cause of Action, judgment against Defendants in the amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial.

(c)      On the Third Cause of Action, judgment against Defendants in the amount of at least One Million Dollars ($1,000,000.00), in compensatory damages; and in an amount of at least Two Million Dollars ($2,000,000.00) in punitive damages, in an exact amount to be determined at trial.

(d)      On the Fourth Cause of Action, judgment against Defendants in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(e)      On the Fifth Cause of Action, judgment against Defendants in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(f)      On the Sixth Cause of Action, judgment against Defendants in the amount of at least One Million Dollars ($1,000,000.00), in compensatory damages; and in an amount of at least Two Million Dollars ($2,000,000.00) in punitive damages, in an exact amount to be determined at trial.

(g)      On the Seventh Cause of Action, judgment against Defendants, in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(h)      On the Eighth Cause of Action, judgment against Defendants in an amount of at least One Million Dollars ($1,000,000.00), in an exact amount to be determined at trial;

(i)      On the Ninth Cause of Action, judgment against Defendants in the amount of at least One Million Dollars ($1,000,000.00), in compensatory damages; and in an amount of at least Two Million Dollars ($2,000,000.00) in punitive damages, in an exact amount to be determined at trial.

Dated: New York, New York
     July 28, 2023

                            McLAUGHLIN & STERN, LLP

                            By: _/s/ Brett R. Gallaway_____
                            Brett R. Gallaway
                            Charles F. Kellett
                            260 Madison Avenue
                            New York, New York 10016
                            (212) 448-1100
                            Bgallaway@mclaughlinstern.com
                            Ckellett@mclaughlinstern.com

                            *Attorneys for Plaintiff*